T.C. Memo. 2019-18

UNITED STATES TAX COURT

ROBERT WESLEY, Petitioner,
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18174-17L.                    Filed March 14, 2019.

Robert Wesley, pro se.

Vladislav M. Rozenzhak, Hans Famularo, and Willis B. Douglass, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge: In this collection due process (CDP) case, petitioner seeks review pursuant to section 6330(d)(1) of the determination by the Internal Revenue Service (IRS or respondent) to uphold a notice of intent to levy to facilitate collection of petitioner's unpaid Federal income tax liabilities and penalties

**[\*2]** for 2010, 2012, and 2015.[1]  Respondent has agreed to abate a $5,000 penalty assessed for 2010 under section 6702 (civil penalty for submitting a frivolous tax return).  Respondent has also agreed to abate a portion of petitioner's assessed liability for 2012.  Subject to these concessions we will sustain the proposed collection action.  We will also require petitioner to pay to the United States, under section 6673(a), a penalty of $10,000 for advancing frivolous positions in this Court.

## FINDINGS OF FACT

A.    Taxable Year 2010

Petitioner and his wife jointly filed Form 1040, U.S. Individual Income Tax Return, for 2010.  They did not pay the tax shown as due on that return.  The IRS commenced collection action and petitioner requested a CDP hearing.  Dissatisfied with the outcome of that hearing, he sought review in this Court.  See Wesley v. Commissioner, T.C. Dkt. No. 6560-14L (petition filed Mar. 24, 2014).

In an order and decision entered March 13, 2015, we sustained the collection action for 2010 and imposed on petitioner, under section 6673(a), a penalty of $7,500 for advancing frivolous positions.  We noted that he had made "baseless

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] allegations of fraud against respondent" and had submitted to the settlement officer a purported amended return for 2010 showing zero gross income and zero tax due. In support of this "zero return" he cited "irrelevant Code sections and IRS regulations" and alleged that he had no obligation to file an income tax return because "he is not dead and is not * * * an executor of an estate."

We noted that we had previously sanctioned petitioner, in litigation concerning his 1998 tax year, for advancing frivolous positions in this Court. See Wesley v. Commissioner, T.C. Dkt. No. 4647-02L (order and decision entered Dec. 4, 2002) (granting summary judgment for the Commissioner and imposing a penalty of $2,500 under section 6673(a)). We determined that a penalty of $7,500 was appropriate "so as to dissuade petitioner from continuing to occupy the Government and this Court with baseless litigation." Petitioner did not appeal our decision in docket No. 6560-14L, and that decision is now final. See sec. 7481(a)(1).

Petitioner has not paid the $7,500 penalty imposed by this Court in March 2015, and it is the 2015 liability that is at issue in this CDP case. The IRS separately assessed against petitioner for 2010 a $5,000 civil penalty under section 6702 for submitting a frivolous tax return. That assessment was prompted by petitioner's submission, during the CDP hearing in docket No. 6560-14L, of a pur-

[*4] ported amended return showing zero tax liability. At trial of this case respondent conceded the section 6702 penalty for 2010 and represented that it will be abated. Thus, the only liability relating to petitioner's 2010 tax year that remains in issue is the $7,500 penalty that we imposed in 2015 under section 6673(a).

B.     Taxable Year 2012

Petitioner did not file a Federal income tax return for 2012. Using information supplied in third-party reports, the IRS prepared a substitute for return (SFR) that met the requirements of section 6020(b). On the basis of the SFR the IRS issued petitioner a notice of deficiency dated January 4, 2016. This notice was addressed to him at his current address of record in Fontana, California. He does not dispute that this was his "last known address" as of January 4, 2016. See sec. 6212(b)(1).

The notice determined a deficiency of $43,332 and additions to tax totaling $14,868 under sections 6651 and 6654. The IRS determined that petitioner had received during 2012, but had failed to report, wages of $55,819 from the State of California, taxable retirement plan distributions of $91,533 from the California Public Employees Retirement System (CALPERS), and miscellaneous income of $737. The IRS determined self-employment tax of $91 and an additional tax of

[*5] $9,153 under section 72(t) (imposing a 10% additional tax on premature distributions from qualified plans). The IRS allowed petitioner a standard deduction, one personal exemption, and prepayment credits totaling $6,402, resulting in a balance due of $36,930.

Petitioner did not challenge the determinations in the notice of deficiency by filing a petition with this Court. The IRS accordingly assessed the deficiency it had determined for 2012, plus interest and additions to tax. At the time of the CDP hearing petitioner's total assessed liability for 2012 exceeded $61,000.

C.     CDP Hearing

When petitioner failed to pay on notice and demand the tax liabilities discussed above, the IRS issued him, on December 15, 2016, a notice of intent to levy. On January 13, 2017, he timely requested a CDP hearing. In his hearing request he stated: "I had no 'taxable income' for the year in question"; "You have mistaken my identity"; and "You have erroneously failed to conduct an assessment and have it signed under oath by an assessment officer." He demanded a face-to-face hearing, asserting that a telephone hearing would be inadequate. He did not express any desire for a collection alternative.[2]

---

[2]Petitioner checked the box for "lien withdrawal," but the IRS had not filed against him (as of January 2017) a notice of Federal tax lien for any year at issue.

**[\*6]**  The IRS acknowledged receipt of petitioner's hearing request and asked that he submit tax returns for 2013, 2014, and 2015, which it had no record of receiving.  Petitioner responded by letter dated February 4, 2017, asserting that, "by adhering to the federal statute and regulations," he had no taxable income for any of these years.  "In addition," he asserted, "the tax return that you wanted me to file is a death tax and I am not dead * * * .  Had I filed a 1040 form I would be committing perjury, which I will not do."  He reiterated his demand for a face-to-face hearing, asserting:  "I will not do a telephone hearing."

Petitioner's case was assigned to a settlement officer (SO) at the Fresno, California, IRS Appeals Office.  On April 4, 2017, the SO notified petitioner that she had scheduled a telephone CDP hearing for May 4, 2017, and instructed him to call her on that day at 1:30 p.m.  If petitioner desired a collection alternative, he was instructed to submit Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting financial information, as well as proof that he had filed tax returns for 2013-2015.

Petitioner replied by letter dated April 14, 2017, stating:  "I had already demanded a face to face hearing and specifically stated that I did not want a telephonic hearing."  He asserted that he had zero tax liability for 2012, advancing two frivolous arguments.  His first argument was as follows:

**[*7]**    I cannot and will not sign a Form 1040 because [section] 1040 pertains to the transfer of certain farm, etc., real property and it designates the "Executor" of an estate * * * and a "Trustee" of a trust to do certain things. Since I am not in receipt of any legal document informing me that I am an "Executor" of an estate * * * or a "Trustee" of any trust, then it would be perjury for me to fill out a Form 1040.

His second argument was based on section 861, which specifies sourcing rules for income received by nonresident alien individuals and foreign corporations. By virtue of section 861, he asserted, he had no taxable income for 2012.

Petitioner did not call in for the CDP hearing on May 4, 2017. On May 10, 2017, the SO sent him a "last chance" letter, noting that he had neither participated in the hearing nor informed her that the scheduled time was inconvenient. She noted that he had supplied no financial information to support a collection alternative and had failed to submit copies of tax returns for 2013-2015. She gave petitioner two weeks to submit any information he wished her to consider, indicating that she would otherwise make her determination on the basis of the information in the administrative file.

Petitioner replied by letter dated May 18, 2017, in which he provided no information of any sort. He instead reiterated his demand for a face-to-face hearing, stating: "I once again reject your attempt to try to force a telephonic hearing on

[*8] me." He asserted that he had "a statutory right to a face to face hearing" and demanded that the SO "schedule [his] face to face [hearing] as initially requested."

After receiving this letter the SO decided to close the case. She reviewed the administrative file and determined that the tax liabilities in question had been properly assessed. The $7,500 penalty was assessed on the basis of this Court's 2015 order and decision. The SO concluded that petitioner could not challenge his underlying liability for that penalty.

For 2012 the SO secured a copy of the notice of deficiency dated January 4, 2016. She verified that this notice was sent to petitioner's last known address, which corresponded to the address from which he had sent all correspondence to her. She confirmed that the tax assessed for 2012 matched the deficiency set forth in the notice.

The SO observed that the envelope in which the 2012 notice of deficiency had been mailed was returned to the IRS by the U.S. Postal Service (USPS), marked "RETURN TO SENDER/UNCLAIMED." Because petitioner may not have received the notice of deficiency, the SO concluded that he might be entitled to dispute his underlying tax liability for 2012. However, she determined that he had not advanced a proper challenge to his underlying liability because his argument that he had zero taxable income for 2012 was frivolous. Because his argument

[*9] was frivolous, she determined that he was not entitled to a face-to-face hearing. And because he had failed to submit any financial information or copies of tax returns for 2013-2015, she determined that he was not entitled to consideration of a collection alternative. On July 28, 2017, the IRS issued petitioner a notice of determination sustaining the proposed levy.

D.    Proceedings in this Court

Petitioner timely petitioned this Court for review of the notice of determination, residing in California at that time. He asserted as the basis for his position that: (1) he "was not involved in interstate commerce," (2) he was not the executor of an estate or the trustee of a trust within the meaning of section 1040, (3) he had no taxable income for 2012 by virtue of section 861, (4) the IRS had not provided him "any record of a summary record of assessment," and (5) the IRS was "attempting to create 'taxable income' from unsworn testimony and inadmissible hearsay information and impart a duty on petitioner without identifying a specific taxing statute." He asserted that he had a statutory right to a face-to-face hearing and that the SO had erred in denying him one. Two months later he filed an amended petition repeating these allegations and also alleging that "the Postal Service confirms no statutory notice of deficiency * * * was ever mailed to petitioner" for 2012.

[*10] On November 3, 2017, respondent filed (and later supplemented) a motion to dismiss this case for failure to state a claim on which relief could be granted. On May 11, 2018, we denied that motion as supplemented; applying a liberal standard to petitioner as a pro se litigant, we concluded that he had raised at least one justiciable issue. We noted, however, that "a review of petitioner's filed documents, including the amended petition with its attachments, reveals that they are replete with time-worn tax protester arguments. Most of petitioner's allegations are frivolous and groundless * * * and do not merit serious discussion."

We struck ten paragraphs from the amended petition as advancing frivolous contentions. These included petitioner's arguments that he had no taxable income by virtue of sections 861 and 1040 and that the assessments were invalid because they were not signed personally by an assessment officer. We warned petitioner again that he risked penalties under section 6673(a).

Undeterred by these warnings, petitioner served on respondent a request for production of documents and a request for admissions with 37 questions. Virtually all of the information petitioner requested related to frivolous contentions or irrelevant matters. On August 20, 2018, we issued an order relieving respondent of any obligation to respond to these discovery requests, stating: "It is obvious from both documents that petitioner is advancing a variety of well-worn tax-protestor

**[\*11]** arguments. We advise petitioner once again that if he continues down this path we will impose upon him a large penalty."

Before trial petitioner refused, in violation of our Rules, to stipulate any documents. On November 20, 2018, respondent moved for an order to show cause why proposed facts and evidence should not be accepted as established under Rule 91(f). We granted that motion and directed petitioner to show cause in writing by December 28, 2018, why we should not accept the documents and evidence attached to respondent's motion as established for purposes of this case.

Petitioner's response to our order consisted almost entirely of frivolous arguments and other material "not fairly directed to the proposed stipulation or portion thereof." See Rule 91(f)(3). At the opening of trial we admitted into evidence, over petitioner's objection, a copy of the notice of determination upon which this case is based, the administrative file assembled by the IRS settlement officer who conducted petitioner's CDP hearing, a USPS document relating to the notice of deficiency for 2012, and a copy of this Court's order and decision in Wesley v. Commissioner, docket No. 6560-14L.

At trial petitioner offered and we admitted into evidence a screen shot of information he had downloaded from the USPS tracking system. We also admitted into evidence, over petitioner's objection, documents respondent had sub-

[*12] poenaed from the State of California certifying the wages it had paid to petitioner for 2012 and documents respondent had subpoenaed from CALPERS certifying the taxable retirement distributions it had made to petitioner for 2012. The latter sets of documents were accompanied by declarations from the relevant custodians of records. See Fed. R. Evid. 902(4).

Counsel for respondent represented that the CALPERS documents showed that petitioner for 2012 was not liable for the section 72(t) additional tax imposed upon early distributions from a qualified plan. Counsel accordingly agreed that the IRS would abate the portion of the 2012 assessment attributable to the $9,153 of additional tax. Counsel also agreed to abate the portion of the 2012 assessment attributable to $737 of miscellaneous income and (as noted previously) the $5,000 penalty assessed for 2010 under section 6702.

## OPINION

### A.   Standard of Review

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. Where the validity of a taxpayer's underlying tax liability is properly at issue, we review the IRS' determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). We review the SO's decision in other respects for abuse of dis-

**[\*13]** cretion only.  Id. at 182.  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

B.      Challenge to Underlying Liability

Petitioner's liability for the $7,500 frivolous-position penalty was established by this Court's March 2015 order and decision in docket No. 6560-14L.  Res judicata precludes petitioner from challenging this liability now.  See Koprowski v. Commissioner, 138 T.C. 54, 60 (2012); Forrest v. Commissioner, T.C. Memo. 2005-228.  The SO correctly determined that petitioner could not dispute his liability for this penalty at the CDP hearing.

A taxpayer may raise a CDP challenge to the existence or amount of his underlying tax liability if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).  It is not clear whether petitioner received (or should be treated as having received) the notice of deficiency for 2012.  It was addressed to the address at which he then resided, and it was marked "unclaimed" by the USPS after it unsuccessfully attempted delivery.  A taxpayer "cannot defeat actual notice by deliberately refusing delivery of statutory notices of deficiency."  Sego v. Commissioner, 114 T.C. 604, 611 (2000).  Petitioner testified that he did not

[*14] receive the notice, but we found his testimony to lack credibility in other respects. For purposes of deciding this question, however, we will assume arguendo that he did not receive the notice of deficiency for 2012.

If petitioner did not receive that notice, he was entitled to challenge his underlying tax liability for 2012. See sec. 6330(c)(2)(B). But in order to present a cognizable liability challenge, a taxpayer must submit evidence and argument directed to the substance of the IRS' determinations. See Goza v. Commissioner, 114 T.C. at 183 (holding that a taxpayer who advanced only frivolous arguments did not mount a proper challenge to his underlying tax liability).

The SO correctly declined to consider petitioner's challenge to his underlying liability for 2012 because his arguments were frivolous. His challenge was grounded on the theory that he had zero taxable income for 2012. Wages and taxable retirement distributions constitute taxable income. See secs. 61, 72, 402(a). His position to the contrary was frivolous.

The subsidiary arguments he advanced to support his "zero income" theory were also frivolous. His argument that wages are not income because they are not listed in section 861 and its implementing regulations--which govern the sourcing of income for nonresident alien individuals and foreign corporations--was held to be "standard tax protester rhetoric" 17 years ago. Corcoran v. Commissioner, T.C.

**[*15]** Memo. 2002-18, 83 T.C.M. (CCH) 1107, 1108-1109, 1110 (imposing penalty of $2,000 under section 6673(a)), aff'd, 54 F. App'x 254 (9th Cir. 2002). And his argument that he had no obligation to file a Federal income tax return because he was not a trustee or the executor of an estate--an argument evidently based on the fact that IRS Form 1040 and Code section 1040 happen to share the same four digits--is self-evidently absurd. In our May 11, 2018, order, we struck from petitioner's amended petition, as frivolous, the paragraphs in which he advanced these two arguments.

Because petitioner did not advance a proper challenge to his 2012 tax liability at the CDP hearing, he was not entitled to raise such a challenge in this Court. See Goza, 114 T.C. at 183; sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. ("An issue is not properly raised * * * if consideration [of an issue] is requested but the taxpayer fails to present to Appeals any evidence[.]"). In any event petitioner failed to carry his burden of proving that he did not receive during 2012 wages of $55,819 and taxable retirement distributions of $91,533. Business records supplied by the State of California and CALPERS show the payments they made to petitioner, and he does not dispute that the payments shown match the

[*16] amounts in the notice of deficiency. He testified that he did not actually receive any of this money, but we did not find his testimony credible.[3]

In sum, we conclude that petitioner was not entitled to challenge, at the CDP hearing or in this Court, his liability for the $7,500 penalty because that liability was established by a final decision of this Court. He was not entitled to challenge in this Court his underlying tax liability for 2012 because he advanced only frivolous arguments on that score during the CDP proceeding. And even if he were entitled to dispute that liability here, he failed to carry his burden of proving that he did not receive the $147,352 of wage and retirement income that remains at issue.[4]

---

[3]The State of California supplied a copy of a canceled check made out to petitioner for $45,251, bearing his signature on the endorsement line. He testified that this was not his signature, but we did not find this testimony credible. The signature resembles petitioner's signature as it appears on dozens of other documents in the record. In any event petitioner offered no plausible explanation about where the money went if not to him.

[4]We do not believe that respondent was obligated to concede the inapplicability of the section 72(t) additional tax or the nontaxability of $737 in miscellaneous income. For purposes of deciding this case, however, we will give effect to these concessions and to respondent's agreement to abate the portion of the 2012 tax attributable to those amounts. We assume that further abatements may be required with respect to self-employment tax and for portions of the sections 6651 and 6654 additions to tax.

[*17] C.     Abuse of Discretion

We review the record to determine whether the SO:  (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).

Our review of the record establishes that the SO satisfied all of these requirements.  In verifying the assessments she did not rely solely on petitioner's electronic account transcripts but secured source documents to confirm that the $7,500 penalty and the 2012 tax liability had been properly assessed.  With respect to the latter, the SO secured a copy of the January 4, 2016, notice of deficiency.  She confirmed that it was addressed to petitioner at his last known address, which was also his current address of record.  And she verified that "the assessment amount matches to the amount shown" on the notice of deficiency.  We are satisfied that she discharged her duty to verify that the assessments were properly made.  See sec. 6330(c)(1); Jordan v. Commissioner, 134 T.C. 1, 12 (2010), supplemented by T.C. Memo. 2011-243.

**[\*18]** In his amended petition and at trial petitioner argued for the first time that the IRS <u>never mailed</u> the notice of deficiency for 2012. His argument is baseless. The notice of deficiency secured by the SO had stapled to it the envelope in which it had been mailed. Because the envelope was returned to the IRS by the USPS, it is obvious that it had been mailed.[5] The record includes a copy of a USPS form showing that a document with a certified mail number matching that on the notice of deficiency was mailed by the IRS Ogden Service Center to petitioner at his last known address.[6]

Petitioner's argument that he had a statutory right to a face-to-face hearing, while not absolutely frivolous, is close to it. The regulations provide that a "CDP hearing may, but is not required to, consist of a face-to-face meeting." Sec.

---

[5]We permitted petitioner to introduce into evidence a copy of a screen shot he had made on June 26, 2018, when querying the USPS online tracking service concerning the status of the document with a certified mail number matching that on the notice of deficiency. Petitioner made this query 2-1/2 years after the notice was mailed, and the USPS online tracking service cuts off after two years. <u>See</u> <u>Fong v. Commissioner</u>, T.C. Memo. 2007-137, 93 T.C.M. (CCH) 1299, 1301 (citing the USPS website), <u>aff'd</u>, 2009 WL 567867 (9th Cir. Mar. 6, 2009). The status displayed on the screen shot was "label created, not yet in system." Petitioner supplied no testimony to establish the meaning of this response to a query about a mailing more than two years old.

[6]The notice of deficiency is dated January 4, 2016, but it was delivered to the USPS for mailing on December 31, 2015, the preceding business day. (The intervening three days were New Year's Day, a Saturday, and a Sunday.)

[*19] 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.  We have repeatedly held that the IRS is not required to afford a taxpayer a face-to-face hearing and that a hearing conducted by telephone, correspondence, or document review will suffice.  See, e.g., Katz v. Commissioner, 115 T.C. 329, 337-338 (2000); Williamson v. Commissioner, T.C. Memo. 2009-188, 98 T.C.M. (CCH) 110, 112; Stockton v. Commissioner, T.C. Memo. 2009-186, 98 T.C.M. (CCH) 103, 106.  Indeed, the regulations explicitly provide a taxpayer will not be granted a face-to-face hearing when his hearing request (like petitioner's) raised only frivolous arguments.  Sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs.

Finally, the SO did not abuse her discretion in declining to consider collection alternatives.  Petitioner submitted no offer of a collection alternative, much less the financial information that would be required to support one.  IRS records showed that petitioner had not filed tax returns for 2013-2015, and the SO could properly have rejected a collection alternative on this ground alone.  See Cox v. Commissioner, 126 T.C. 237, 257-258 (2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008); Hull v. Commissioner, T.C. Memo. 2015-86, 109 T.C.M. (CCH) 1438, 1441.

**[*20]** D.     <u>Frivolous Position Penalty</u>

Section 6673(a)(1) authorizes this Court to impose a penalty not in excess of $25,000 "[w]henever it appears to the Tax Court" that a taxpayer has instituted or maintained a proceeding "primarily for delay" or has taken a position that is "frivolous or groundless." The purpose of section 6673 is to compel taxpayers to conform their conduct to settled tax principles and to deter the waste of judicial resources. See <u>Coleman v. Commissioner</u>, 791 F.2d 68, 71 (7th Cir. 1986); <u>Bruh-wiler v. Commissioner</u>, T.C. Memo. 2016-18, 111 T.C.M. (CCH) 1071, 1074.

Petitioner has raised many frivolous arguments during this litigation. We sanctioned him on two prior occasions for advancing frivolous arguments, and in this case we repeatedly warned him to desist from doing so. We struck from his amended petition 10 paragraphs containing frivolous arguments, yet he persisted in advancing those very same arguments in discovery motions and at trial. He has wasted considerable resources of the IRS and this Court.

Given this track record, we believe petitioner to be deserving of a very severe sanction. But because respondent (rather generously) made several concessions in this case, petitioner by filing his petition has secured some relief despite his own worst efforts. We will accordingly require him to pay in this case a penalty of only $10,000.

**[*21]** To reflect the foregoing and to account for concessions made by respondent,

Decision will be entered under

Rule 155.
